**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| KEVIN CLARKE, in his individual capacity, TREVOR BOECKMANN, in his individual capacity, HARRY CRANE, in his individual capacity, CORWIN SMIDT, in his individual capacity, PREDICT IT, INC., a Delaware corporation, and ARISTOTLE INTERNATIONAL, INC., a Delaware corporation,<br><br>               Plaintiffs,<br><br>   v.<br><br>COMMODITY FUTURES TRADING COMMISSION,<br><br>               Defendant. | Case No. 1:22-cv-00909 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Kevin Clarke, Trevor Boeckmann, Harry Crane, Corwin Smidt, Predict It, Inc. ("PredictIt"), and Aristotle International, Inc. ("Aristotle"), by and through their undersigned counsel, allege for their Complaint for Declaratory and Injunctive Relief against Defendant Commodity Futures Trading Commission ("CFTC" or the "Commission") as follows:

### INTRODUCTION

1.     Since 2014, the Victoria University of Wellington ("Victoria University") has operated an online market for political-event contracts (the "PredictIt Market" or the "Market"). This case challenges the Commodity Futures Trading Commission's decision arbitrarily, capriciously, and without legally required process to revoke its permission for the Market to operate and thereby to force the premature liquidation of dozens of contracts, damaging those who

invest in the Market, scholars who study and teach from the data produced by the Market, and the entities servicing the Market.

2.      The PredictIt Market provides members of the public an opportunity to make investments based on their views about the likely outcome of future elections or other significant political events, like the passage of federal legislation or the nomination of Supreme Court Justices and cabinet officials.  Essentially a stock exchange for political events, the PredictIt Market hosts dozens of event markets about the outcomes of future political events.  Each event market includes one or more questions about a particular political event, such as the 2024 presidential election. Each question is binary—it must have a yes or no answer—and investors' positions on the outcome are known as "contracts."  PredictIt Market users purchase 'yes' or 'no' contracts in an event market—*e.g.*, yes, Joe Biden will win reelection, or no, Joe Biden will not win reelection—for prices ranging from 1 to 99 cents.  Contract prices fluctuate based on the investors' willingness to pay as measured by their view of the probability of the event taking place.  If the prediction of the outcome of a contract is correct, it is redeemed for one dollar, while incorrect outcome predictions receive no payout.

3.      Unlike a fully regulated stock, futures, or swaps market, however, investors are not permitted to purchase as many as they wish of any one contract.  Instead, an investor may not invest funds in excess of $850 in any one contract.  In addition, the total number of active traders in any one contract is limited to 5,000.  This is in line with the primary purpose of the Market—to be a small-scale market with an academic purpose to produce market-generated trading/pricing information regarding what informed investors believe the outcome is going to be, reinforced by a relatively small financial investment, without giving any one person enough of a financial stake through the Market to try to change the outcome of a political event.

4.      Victoria University launched the PredictIt Market for the academic value of the pricing/trading data generated by investor trading on political event contracts and to study, among other things, whether markets are more accurate than polling.  Indeed, the results data generated by the PredictIt Market have been used by more than 140 academics around the world, both in their teaching and research.  Through this study, the percentage-trading price of election- and political-event contracts offered on the Market has been found to be a remarkably accurate predictor of the outcomes, as informed onlookers tend to put aside biases and other views when they put up even a modest financial investment on the outcome.  This accuracy is reflected by the heavy reliance of news outlets on political-event markets in reporting on projected political outcomes. *See, e.g.*, Bernard Stanford, *There's a Glorious Website Where You Can Bet on Politics, and the U.S. Is About to Kill It*, Slate (Aug. 14, 2022), https://slate.com/business/2022/08/predictit-cftc-shut-down-politics-forecasting-gambling.html; Victor Reklaitis, *Betting Markets Now See Democrats Keeping Their Grip on Senate in Midterm Elections*, MarketWatch (Aug. 4, 2022), https://www.marketwatch.com/story/betting-markets-now-see-democrats-keeping-their-grip-on-senate-in-midterm-elections-11659542352; A.G. Gancarki, *Donald Trump Retakes 2024 Prediction Market Lead from Ron DeSantis*, Florida Politics (July 7, 2022), https://floridapolitics.com/archives/537385-donald-trump-retakes-2024-prediction-market-lead-from-ron-desantis/; UBS Editorial Team, *ElectionWatch:Potential Outcomes of the Midterms*, UBS Wealth Management USA (Apr. 22, 2022), https://www.ubs.com/us/en/wealth-management/insights/market-news/article.1563885.html.

5.      Plaintiffs Kevin Clarke and Trevor Boeckmann (together, the "Investor Plaintiffs") each have invested in hundreds of PredictIt Market event contracts over several years.  Each holds event contracts that turn on the outcome of the 2024 presidential election, for which he believes—

based on his informed views on political events and study of the fluctuations in the Market as an indicator of change—that he has chosen the correct outcome. For each contract, the Investor Plaintiffs expect to realize a profit on their investments either by selling at a favorable point during the life of the market or by holding the contract to the conclusion of the market when they expect to redeem it at one dollar. Mr. Clarke and Mr. Boeckmann made their investments in PredictIt Market contracts based on their understanding that the Market's offerings were permitted by the federal government and that their contracts could be traded until the political event on which the contracts are based occurs.

6.      Plaintiffs Harry Crane and Corwin Smidt (together, the "Academic Plaintiffs") are among the university professors who rely on the PredictIt Market as a source of data for research and academic scholarship and as a pedagogical tool for teaching college and graduate students regarding political events and the efficiency of markets. Professors Crane and Smidt have relied and intend to draw on data generated by the PredictIt Market in their research in the fields of statistics and political science. They have also incorporated the PredictIt Market into their classes. By studying the PredictIt Market (a real-world, topical example of prediction markets), student engagement increases and students gain a practical understanding of the Market and its operation.

7.      The PredictIt Market has operated for more than seven years pursuant to "no-action relief" ("No-Action Relief") granted under Commodity Futures Trading Commission regulations. 17 C.F.R. § 140.99. The terms of the Commission's grant of No-Action Relief are memorialized in a written decision. The No-Action Relief has permitted Victoria University to operate the PredictIt Market without formally registering it as a designated contract market or swap-execution facility. The No-Action Relief sets forth the terms under which the PredictIt Market is permitted

to operate.  A true and correct copy of the No-Action Relief, "CFTC Ltr. No. 14-130," is attached hereto as Exhibit 1.

8.      On August 4, 2022, the CFTC revoked the No-Action Relief.  The Commission communicated its decision through "CFTC Letter 22-08" (the "Revocation"), a true and correct copy of which is attached hereto as Exhibit 2.

9.      The only explanation in the Revocation is that Victoria "University has not operated its market in compliance with the terms of [CFTC] Letter 14-130," the 2014 No-Action Relief.  *See* Ex. 2 at 2.  The Revocation contains no explanation of *how* the PredictIt Market's operations violated the terms of the Commission's No-Action Relief or *why* revocation of the Commission's license for the Market to operate is the appropriate remedy for those violations.  The Revocation provides neither notice of the facts that may warrant revocation, nor an opportunity to demonstrate or achieve compliance with the terms of the Commission's No-Action Relief.  *Id.*

10.      The Revocation provides the following commands:

> To the extent the University is operating any contract market, as of the date of this letter, in a manner consistent with each of the terms and conditions provided in Letter 14-130, all of those related and remaining listed contracts and positions comprised all associated open interests in such market should be closed out and/or liquidated no later than 11:59 p.m. eastern on February 15, 2023.

Ex. 2 at 2.

11.      The Revocation's command to liquidate certain contracts by February 15, 2023, will cause a chaotic wind-down of the Market.  Many existing PredictIt Market contracts turn on events that will occur well after February 2023, particularly the 2024 primary and general elections in the United States.  Without any detailed explanation as to why or how, the Commission is dictating that those contracts must be liquidated prematurely, by February 2023.  In addition, the Revocation gives no indication of what contracts the Commission believes are "consistent with

each of the terms and conditions" of the No-Action Relief and may continue to February 2023 and which are not.

12.    The Revocation of the Commission's No-Action Relief effectively means that the PredictIt Market must close.  The Commission took this step with no reasoned explanation for its decision, no explication of facts that would support its decision, no transition plan for addressing scores of existing contracts held by more than ten thousand traders, and no consideration of any alternatives to the chaotic, disruptive, and economically damaging wind-down of the Market its decision forces.  The direct consequence of the Revocation—the premature liquidation of contracts that would otherwise turn on events occurring after February 2023—is unnecessarily disruptive.

13.    In particular, the Revocation will cause harm to the Investor Plaintiffs.  Solely due to the Commission's Revocation, Mr. Clarke and Mr. Boeckmann will be deprived of the opportunity to see their positions through to the occurrence or non-occurrence of the political events on which their contracts are based.  They do not understand why the Commission, even if it for some reason wants the Market to shut down, cannot let their existing contracts continue to trade until the election or event window would naturally close.  The Revocation decision provides no explanation for this arbitrary cut-off.

14.    The Revocation also will cause harm to the Academic Plaintiffs.  Gone will be the days that they use the data generated by the Market for research and teaching purposes.  This will impact the quality of their legal scholarship and the student experience.

15.    The Commission's Revocation of the No-Action Relief for the PredictIt Market, without explanation or other indication of reasoned decisionmaking, without "written notice of the facts or conduct which may warrant" the Revocation, and without providing anyone "an opportunity to demonstrate or achieve compliance" with the terms of No-Action Relief or other

requirements, violates the Administrative Procedure Act.  5 U.S.C. §§ 558, 706.  Among other

things, the Revocation is "arbitrary, capricious, an abuse of discretion, [and/or] otherwise not in

accordance with law" and occurred "without observance of procedure required by law."  5 U.S.C.

§ 706.

16.    The Court should "hold unlawful and set aside" the Revocation, including its

command that contracts that would otherwise turn on events occurring after February 2023 be

prematurely liquidated.  5 U.S.C. § 706.  The Court also should enter a preliminary and then

permanent injunction against the prescriptions in the Revocation requiring the liquidation of

contracts by February 2023, including contracts that concern the 2024 elections, well before they

would ordinarily mature.

## JURISDICTION AND VENUE

17.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 as Plaintiffs'

causes of action arise under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, a

law of the United States.

18.    Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(B)–(C).  Plaintiff

Kevin Clarke resides in the Austin, Texas and no real property is involved in this action.  In

addition, a substantial part of the events or omissions giving rise to the claims also occurred in this

jurisdiction.  Mr. Clarke has made numerous investments in event contracts on the PredictIt Market

from Austin, Texas, where he has lived since 2010.  Many of these contracts will not close before

the dates specified by the CFTC in the Revocation, and the Revocation decision will cause

Mr. Clarke harm and damage in the Western District of Texas.

19.    An actual controversy exists between the parties under 28 U.S.C. § 2201, and this

Court has authority to grant declaratory and injunctive relief to set aside the CFTC's withdrawal

of the No-Action Relief and to issue all necessary and appropriate process to preserve Plaintiff's status or rights pending the conclusion of the proceedings, as requested herein.  28 U.S.C. §§ 2201, 2202; 5 U.S.C. §§ 705–06.

## PARTIES AND RELEVANT ENTITIES

20.    Defendant Commodity Futures Trading Commission (previously defined as "CFTC" or the "Commission") is an independent federal agency established under the § 2 of the Commodity Exchange Act, 7 U.S.C. § 2, that regulates the derivatives markets, including futures contracts, options, and swaps, in the United States.  The CFTC is headquartered in the District of Columbia.

21.    Plaintiff Kevin Clarke is an individual who lives and works in Austin, Texas, which is in the Western District of Texas.  Mr. Clarke has purchased positions in almost every contract market offered by the PredictIt Market, including positions that are based on political events that will not occur until after February 15, 2023, when the CFTC has ordered the PredictIt Market to cease operations.  Mr. Clarke's use of the PredictIt Market, including purchases and trades on the Market, has almost universally occurred from his home or business in Austin, Texas, in the Western District of Texas.

22.    Plaintiff Trevor Boeckmann is an individual domiciled in New York City, New York.  Mr. Boeckmann purchased event contracts on the PredictIt Market that are based on political events that will not occur until after the CFTC has ordered the PredictIt Market to cease operations.

23.    Plaintiff Harry Crane is a Professor of Statistics at Rutgers University in New Jersey and a fellow at the London Mathematical Institute.  Professor Crane utilizes the PredictIt Market and the data it generates in his teaching and research.

24.    Plaintiff Corwin Smidt is an Associate Professor in the Department of Political Science at Michigan State University.  Professor Smidt utilizes PredictIt Market data in his teaching and research.  Professor Smidt resides and works in Michigan.

25.    Victoria University of Wellington (previously defined as "Victoria University") is not a party to this litigation.  Victoria University is a publicly owned university based in and operating under the laws of New Zealand.  Victoria University has operated an online market for political-event contracts (previously defined as the "PredictIt Market" or the "Market") since 2014.  Victoria University had no intention of ending the PredictIt Market prior the CFTC's withdrawal of the No-Action Relief, and, but for the CFTC's action, Victoria University would have continued the markets for 2024 contracts through their natural conclusions.  Victoria University intends to comply with the terms of the CFTC's Revocation and therefore close the 2024 contracts in advance of their maturity unless the Revocation is abrogated, amended, or suspended.

26.    Plaintiff Predict It, Inc. (previously defined as "PredictIt") is a Delaware corporation with its principal place of business in the District of Columbia and a subsidiary of Aristotle International, Inc.  PredictIt is an internet distributor of user-generated predictive content.  PredictIt, together with Plaintiff Aristotle, services the PredictIt Market.

27.    Plaintiff Aristotle International, Inc. (previously defined as "Aristotle"), is a Delaware corporation with its principal place of business in the District of Columbia.  Aristotle provides know-your-client and identity-verification services to a wide variety of customers and provides information-technology services to political campaigns and organizations, including software, political data, consulting, and outsourcing services.  Victoria University has entered into a market servicing agreement with Aristotle, under which Aristotle serves as the clearing house for trades on the PredictIt Market and provides other services for the PredictIt Market through its

Predict It, Inc. subsidiary.  Pursuant to that agreement and the terms and conditions of the PredictIt Market, investors that open accounts on the PredictIt Market enter into a contract with Aristotle.

## BACKGROUND

### I.    The PredictIt Market's Operations and Offerings

28.    The PredictIt Market poses numerous yes-or-no questions regarding the outcome of political events at any given time.  Discrete questions are grouped into "event markets" involving the same election or other political event.  Investors can buy "contracts" based on what they believe to be the likely outcome of the political event.  For example, the event market involving the 2024 Republican presidential nomination includes yes-or-no contracts on 17 different potential candidates.  Other event markets include only one contract.

29.    The PredictIt Market limits each contract to 5,000 active participants with each participant's investment capped at $850 based on the price of the contracts when the investor purchases them.

30.    Until settlement, each contract is valued at less than one dollar. And just like a stock exchange or futures market, the aggregated price of a contract continuously changes as users respond to shifting events that make the outcome more or less likely.  One day a contract predicting that Republicans will win the House could be valued at $0.75.  The next day, the same contract's value could drop to $0.70.

31.    If the event ultimately occurs—*e.g.*, Republicans win control of the House—yes-contracts will close at $1.  If it does not occur—*e.g.*, Republicans do not win the House—yes-contracts will close at $0.  At any time before the event closes, investors are free to liquidate or add to positions by buying and selling contracts.

**II.    Value of the PredictIt Market to the Academic Community**

32.    Victoria University launched the PredictIt Market because of the academic value of the results data generated by the investments of Mr. Clarke, Mr. Boeckmann, and thousands of other traders.  This academic purpose is specifically articulated in Victoria University's request for no-action relief and the CFTC's No-Action Relief decision.  Consistent with that requirement, the data generated by the PredictIt Market is made available to the academic community at no cost. These data have been the subject of study by over 140 academics at universities around the world. Professors Crane and Smidt are among the academics that have and intend to use PredictIt Market data in their teaching and research in the fields of statistics and political science.

33.    Professor Smidt—an associate professor of political science at Michigan State University—has used PredictIt Market data to study the reliability of public opinion as an indicator of future political outcomes.  PredictIt Market data offers Professor Smidt and other researchers a unique long-term look at the public's view of political outcomes because the PredictIt Market offers event contracts much further in advance of the deciding event to which they relate than comparable markets like the Iowa Electronic Markets.

34.    Professor Crane—a statistics professor at Rutgers University—has used and intended to continue using the PredictIt Market in his research and teaching.  In his class, Statistics, Science, and Society, he teaches his students to think quantitatively about real-world matters and reporting.  As part of the class, students study the PredictIt Market and other methods of forecasting political outcomes, like polling and pundits, and analyze their reliability and the ways bias can enter decision and reporting processes.  Similarly, Professor Crane's research using PredictIt Market data has concerned the reliability of various methods of forecasting future political outcomes.  His analysis of PredictIt Market data generated between 2018 and 2020 suggests that

the Market's percentage-trading price is a more accurate predicter overall than predictions made on the opinion-poll analysis website FiveThirtyEight.

35.    If the PredictIt Market were shut down and its contracts expiring after February 2023 prematurely liquidated, the Commission's Revocation will deprive professors like Professors Crane and Smidt of both a valuable pedagogical tool and a rich source of data for their studies in the fields of statistics and political science.  If contracts predicting the outcome of the 2024 presidential election were liquidated prior to their close-out event (*i.e.*, the winner of the 2024 presidential election is determined), the trading data from those contracts would be worthless from an academic perspective, foreclosing future use of the Market as a research resource.

### III.    Investor Plaintiffs' Trade on the PredictIt Market

36.    Mr. Clarke and Mr. Boeckmann have each made significant investments in hundreds of event contracts offered on the PredictIt Market over the past several years.

37.    They each believe, based on their research and study of the Market, that they have purchased PredictIt Market contracts in a manner that will produce a profit, given their views that their side of the contracts are likely to occur.

38.    Mr. Clarke is an assistant policy debate coach at the University of Texas at Austin and owns a business specializing in the acquisition and management of mineral assets such as gemstones and crystals.  He has been trading on the PredictIt Market for roughly two years from his home and business in Austin, Texas, and currently has investments in every contract market offered on the PredictIt Market and open positions in excess of $11,000.  Among his investments are event contracts related to the outcome of the 2024 election cycle that will not close until after the February 15, 2023 wind-down date mandated by the CFTC in the Revocation.

39.    Mr. Boeckmann is a public defender at the Neighborhood Defender Service of Harlem in New York City.  He has traded on the PredictIt Market since 2016 from his home in Harlem, and he currently has thousands of dollars invested in a wide-range of contract markets. The event contracts he has invested in include several related to the outcome of the 2024 presidential election that will not close until after the February 15, 2023 wind-down date.  These contracts include certain predictions on which Republican presidential contenders will not win the Republican nomination and which party's candidate will ultimately win the 2024 presidential election.

40.    Mr. Clarke and Mr. Boeckmann were each aware that the PredictIt Market was operated with the permission of the CFTC and believed that, at a minimum, the event contracts they purchased could be traded until their deciding event occurred.

41.    The CFTC's Revocation—ordering that event contracts be closed or liquidated by February 23, 2023—has distorted the value of Mr. Clarke and Mr. Boeckmann's event contracts. In the wake of the Revocation, Mr. Clarke and Mr. Boeckmann are already observing changes in the pricing of their positions as traders attempt to salvage their investments in contracts that will be prematurely liquidated, either by withdrawing their assets from the Market entirely or attempting to predict what the public's belief about the outcome will be on the liquidation date or the form of the liquidation, rather than what the outcome will actually be.  Amid this disruption, the Investor Plaintiffs do not understand why the CFTC will not allow the contracts they have invested in to run their course.

42.    Among the many factors contributing to this disruption, the Revocation provides no clarity on which contract markets will be permitted to operate until February 15, 2023, and which must liquidate immediately due to alleged noncompliance with the terms and conditions of

the No-Action Relief decision.  This uncertainty has led many investors to pull their money out of the Market immediately even if they otherwise could have profited from their investments before February 15, 2023, effecting remaining traders' ability to sell appreciated contracts that they no longer believe predict a correct outcome.

43.    For contracts that will not close before the February 15, 2023 wind-down date—like those related to the outcome of the 2024 election cycle—investors will be denied the opportunity to realize the return they expect if their contracts were allowed to run their course. Indeed, many investors, like the Investor Plaintiffs, strategically invest in PredictIt contract markets early when outcomes are less certain due to their remoteness in time.  For example, some traders invest in low-value event contracts—*i.e.*, outcomes believed to be unlikely at the time of investment—based on their belief that their predicted outcome will become more likely as the deciding event grows closer, presenting an opportunity to reap a significant return on their investments.  Other investors invest in high-value event contracts early on based on their belief that the odds of the outcome occurring will continue to increase as the deciding event grows closer, presenting an opportunity to reap a smaller but more reliable return.

## IV.    The CFTC Grants No-Action Relief to Victoria University, Licensing the Establishment of the PredictIt Market

44.    In 2014, Victoria University sought no-action relief pursuant to CFTC regulations. *See* 17 C.F.R. § 140.99.  The relief sought would allow Victoria University to operate a not-for-profit market for the trading of event contracts, to offer such event contracts to U.S. persons, and to collect the results data for academic and educational use.  A true and correct copy of the August 26, 2014 Application for no-action relief is attached hereto Exhibit 3.

45.    Following the procedures specified in its regulations, the Commission granted the requested No-Action Relief, by issuing CFTC Letter No. 14-130.  The written grant of relief found

that "the operation of [Victoria University's] proposed market without registration as DCM, FBOT, or swap execution facility, or without registration of its operators, would [not] be contrary to the public interest." Ex. 1 at 5.

46.    In its No-Action Relief decision, the Commission specified certain rules that would govern the PredictIt Market. Importantly, the No-Action Relief decision structured the PredictIt Market to be "small scale," and thus placed limits on the amount of money ($850) that any one person could invest in a particular contract and on the number of active traders (5,000) who could participate in a particular contract. These limits ensure that market participants would not build up so great an interest in the outcome of an election or political event to try to change the outcome or to use the market to hedge a financial investment. And they would ensure the market remained focused on providing information, by aggregating the investment-backed predictions of many. Ex. 1 at 3-5.

47.    In its application for no-action relief, Victoria University listed eight examples of political event contracts it might offer, including who a Presidential candidate may select as his running mate and made clear that: "The Market may list additional event-driven contracts based on significant Political Events." Ex. 3 at 3. The Commission's No-Action Relief written decision accepted the scope of political event contracts that Victoria University proposed to offer in its application for no-action relief and repeated the non-exclusive list of three of the example contracts Victoria University had identified:

> The proposed submarket for political event contracts will include winner-takes-all contracts to predict the following outcomes:
>
> - Which presidential nominee will win his or her party's primary, the general election popular vote, and the Electoral College;
>
> - Who will be the majority party nominee for Vice President; and

- Which party will control the next Congress.

Ex. 1 at 2. Some of these examples pertained to the outcome of a U.S. election, but another did not, as it pertained to the selection of a vice-presidential nominee, a decision made by a candidate and ratified by his party.

48. The use of the word "include" in the description of "political event" contracts made clear that the examples listed were not exclusive. *Id.* This was further reinforced by the explicit reference back to the "proposed submarket for political event contracts" described in Victoria University's application (*id.*), and its reference to offering "additional event-driven contracts based on significant Political Events." Ex. 3 at 3. The No-Action Relief decision placed only the following restriction on the scope of these contracts: "The market will not list any contracts that involve, relate to or reference terrorism, assassination or war." Ex. 1 at 2.

49. Lest there be any doubt that approved political event contracts were not limited to election outcomes, a senior Commission official clarified in later correspondence: "NAL 14-130 lists three *non-exclusive* examples of political contracts – each is tied to election outcomes and allows some flexibility with respect to political contracts," but cautioned that PredictIt should avoid contracts that "appear to have *no relationship to elections or any other meaningful political question.*""

## V. The Commission Precipitously and Without Explanation Revokes Permission to Operate the PredictIt Market

50. Between 2014 and 2022, the PredictIt Market has offered over 8,000 contract markets, in which over 120,000 participants have invested.

51. On August 4, 2022, the CFTC revoked the No-Action Relief by publishing Revocation of CFTC Letter No. 14-130 (previously defined as the "Revocation"). *See* Ex. 2.

52.     The Revocation—issued without any detailed reasoning, explanation, or legally sufficient process—will shut down the PredictIt Market as of February 15, 2023, as the entities servicing the Market cannot continue to permit trading and Investors cannot continue to participate in the Market after the Commission has effectively revoked the Market's permission to operate.

53.     Victoria University had no intention of ending the PredictIt Market prior the CFTC's withdrawal of the No-Action Relief, and, but for the CFTC's action, Victoria University would have continued the markets for 2024 contracts through their natural conclusion. Victoria University intends to comply with the terms of the CFTC's Revocation and therefore close the 2024 contracts in advance of their maturity unless the Revocation is abrogated, amended, or suspended.

54.     The Revocation itself leaves the corporate entities servicing the market and investors to speculate about the basis of the Commission's decision. The Revocation summarily states:

> The University has not operated its market in compliance with the terms of Letter 14-130. As a result, Letter 14-130 is hereby withdrawn and, as such, is not available for the listing or operation of any new or related contracts.

Ex. 2 at 2.

55.     The Revocation further specifies prescriptions for the wind-down of the PredictIt Market:

> To the extent that the University is operating any contract market, as of the date of this letter, in a manner consistent with each of the terms and conditions provided in Letter 14-130, all of those related and remaining listed contracts and positions comprising all associated open interest in such market should be closed out and/or liquidated no later than 11:59 p.m. eastern on February 15, 2023.

Ex. 2 at 2.

56.     The Revocation does not specify how the PredictIt Market's operations at any time during the previous seven years have failed to comply with the terms of the No-Action Relief decision.  It lacks any indication of reasoned decisionmaking.

57.     To the extent that Commission's Revocation is based on an interpretation of its No-Action Relief decision that limits permitted contracts to those directly related to the outcome of a U.S. election and alleged violations of that claimed limit (as suggested in one oral discussion with the Commission staff), the Revocation incorporates reasoning that is contrary to the text, context, and history of the Commission's own No-Action Relief decision and extensive subsequent communications with CFTC staff.  That error, in addition to the lack of explanation in the Revocation itself, further makes the Revocation arbitrary, capricious, and an abuse of discretion.

58.     It also arbitrarily shuts down the PredictIt Market in a manner that ignores less disruptive alternatives without explanation.

59.     The arbitrarily chosen end date of February 15, 2023, alone forces the premature liquidation of dozens of contracts, the settling of which depends on the outcome of elections that will occur in 2024.  The PredictIt Market's participants will be harmed by this premature liquidation, as it will deprive them of the value they anticipate by the event resolving in their predicted direction in 2024.  Even if the Commission had grounds for revoking the Market's permission to operate (which it does not), the Commission arbitrarily passed over, without explanation, the alternative of allowing contracts already issued by the Market to run their course and avoiding the entirely unnecessary displacement caused by the premature liquidation of those contracts.

60.     Mr. Clarke and Mr. Boeckmann are among those Market participants that will be harmed.  They have invested in open event contracts on the PredictIt Market, including those

related to the outcome of the 2024 presidential election that will not close until that year or early 2025.  If the PredictIt Market is shut down before those contracts close, Mr. Clarke, Mr. Boeckmann, and other PredictIt Market participants will be deprived of the benefit of their investments.

## COUNT I
### (Violation of the Administrative Procedure Act – Agency Action, Findings, and/or Conclusions That Are Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Not in Accordance with Law)

61.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

62.    The Investor Plaintiffs, Academic Plaintiffs, Aristotle, and PredictIt may assert claims under the Administrative Procedure Act because they have been adversely affected or aggrieved by the CFTC's withdrawal of the No-Action Relief.  5 U.S.C. § 702.

a.    Mr. Clarke and Mr. Boeckmann are active participants in the PredictIt Market and derive economic value from the ability to trade contracts based on their research and knowledge about the likely outcome of elections and other significant political questions.  In addition, Mr. Clarke and Mr. Boeckmann have contracts that are not scheduled to settle prior to February 15, 2023, and contracts settling prior to then about which there is uncertainty regarding the timing of their liquidation due to the Commission's vague Revocation.

b.    The PredictIt Market is a central component of the Academic Plaintiffs' classes, and data generated by PredictIt Market event contracts is valuable to their areas of research.  If PredictIt Market event contracts are liquidated in February of 2023— prior to the close-out event for many contracts—they will be stripped of a pedagogical tool that facilitates student engagement and understanding of prediction markets, and data from 2024-presidential-election contracts will be

rendered valueless for academic purposes, foreclosing the use of that data in future research.

c.    For more than half a decade, PredictIt and Aristotle have expended significant resources to assist Victoria University in developing and operating the PredictIt Market in reliance on the No-Action Relief.  Victoria University is not a party to this litigation; but Victoria University had no intention of ending the PredictIt Market prior the CFTC's withdrawal of the No-Action Relief, and, but for the CFTC's action, Victoria University would have continued the markets for 2024 contracts through their natural conclusions.  Victoria University intends to comply with the terms of the CFTC's Revocation and therefore close the 2024 contracts in advance of their maturity unless the Revocation is abrogated, amended, or suspended.  Aristotle and PredictIt will be forced to incur massive administrative, labor, time, and other costs if forced to liquidate pending contracts prematurely due to the Commission's wind-down orders.  The arbitrary order to terminate contracts early in violation of contract terms leaves Market Operators to guess about how to unwind contracts.

63.    The CFTC's revocation of the No-Action Relief is a "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704.

a.    Under CFTC regulations, no-action relief is to be sought from the appropriate Division of the CFTC, here the Division of Market Oversight.  17 C.F.R. § 140.99. Victoria University did so in 2014.  There is no option under the CFTC's regulations to appeal the issuance, non-issuance, or revocation of no-action relief to the multi-member Commission or any higher power in the Commission.  *Id.*

b. The CFTC's regulations make clear that no-action letters issued by the Division of Market Oversight bind the division itself in the discharge of its authority delegated from the CFTC, 17 C.F.R. § 140.99(a)(2), and contemplate that the entity seeking no-action relief may rely on a no-action letter issued by the division. *Id.*

c. The entire process—from beginning to end—rests with the Division of Market Oversight.  Accordingly, Plaintiff has no adequate or available administrative remedy to address the Revocation.

d. The Commission itself approved the Revocation of the No-Action Relief.  On information and belief, the Division of Market Oversight's proposed revocation of No-Action Relief was circulated to each Commissioner for his or her objection, and no Commissioner objected.

e.  In the alternative, any effort to obtain administrative remedy would be futile.

64. The Commission's revocation of the No-Action Relief—including its direct order to liquidate contracts by February 15, 2023, that turn on later events—is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and thus violates the APA.  5 U.S.C. § 706(2)(A).

a. The Revocation offered no basis to conclude that it was the product of reasoned decisionmaking, much less was it reasonably explained to the regulated party.

b. In the Revocation, the Commission claims that "the University has not operated its market in compliance with the terms of Letter 14-130" and that "as a result," the No-Action Relief is revoked.  But the Commission provides absolutely no detail or explanation regarding how, when, or in what instances the terms of No-Action

Relief have been violated. The Revocation does not reflect the "reasoned decisionmaking" required by the APA.

c.   To the extent the Commission is claiming that certain contracts offered by the Market have been outside the category of "political event" contracts approved by the No-Action Relief, that contention is arbitrary, capricious, and an abuse of discretion. That assertion is based on a view that the No-Action Relief's license to operate a market is limited to political-event contracts that are directly related to the outcome of a U.S. election. To the extent that interpretation of the No-Action Relief is driving the Commission's revocation of No-Action Relief, it is arbitrary, capricious, and/or an abuse of discretion. That is because the Commission, in 2014, permitted the trading of political markets relating to the outcome of elections or other significant political questions that do not relate to war, terrorism, or assassination. The Commission took no issue in its No-Action Relief decision with the permitted scope of political event contracts sought by Victoria University. Instead, its No-Action Relief decision provided a non-exclusive list examples of the types of contracts to be offered, some of which directly related to election outcomes, and some of which did not, including the selection of a Vice Presidential nominee. From the beginning, the PredictIt Market has offered contracts that predict the outcome of significant political issues, including non-U.S. elections, who would be nominated or confirmed as cabinet officials or Supreme Court justices, and whether key federal legislation would be enacted. The Market offered these contracts without incident for more than seven years. The CFTC has been aware of the PredictIt Market's operations and offerings since its inception, and,

22

through its communications and actions, it has confirmed the PredictIt Market was operating within the scope of the No-Action Relief. *See, e.g.*, Ex. 4 at 5. To the extent the Commission believes certain contracts have been offered that were outside the scope of No-Action Relief, it should raise those particular contracts with the PredictIt Market and ask that they be addressed. It is arbitrary, capricious, and/or an abuse of discretion to revoke the Market's permission to operate on the basis of the Commission's unexplained and undocumented factual and legal contention that certain contracts were offered that are not permitted by the No-Action Relief decision.

65.     The arbitrary reasoning behind the Revocation has led to and been compounded by arbitrary and capricious commands to liquidate certain contracts prematurely. Specifically, the Revocation permits the corporate entities servicing the market to continue operating any contract market operated "in a manner consistent with each of the terms and conditions in" the No-Action Relief until February 15, 2023, at which time "all associated open interest in such market should be closed out and/or liquidated." Ex. B at 2. This disorderly wind-down could have been avoided if the agency had not arbitrarily and capriciously issued the Revocation and its commands for liquidation therein.

66.     The Commission's Revocation and associated commands are arbitrary and capricious in at least the following ways:

a.     The new proscriptions do not provide any detail as to what current contracts are not being operated "in a manner consistent with" the No-Action Relief's terms.

b.     The Revocation does not allow investors, like the Investor Plaintiffs, to realize any benefit from open event contracts that would settle based on events occurring after

February 15, 2023—*e.g.*, event contracts related to the 2024 primary and general elections—which are the majority of the investments currently made in the PredictIt Market.

c.  By forcing the liquidation of PredictIt Market event contracts based on the outcome of the 2024 election cycle before their natural maturation, the Revocation renders data generated, to date, by trading of those contracts valueless for academic analysis.

67.    The Commission's selection of a remedy—the Revocation and its associated commands—for alleged violations of the No-Action Relief decision's terms is arbitrary and capricious.  It ignored or otherwise failed to explain why obvious alternatives—such as allowing all currently pending contracts to run their course and mature on their own terms, while barring the creation of new event markets—should not be selected.

<u>**COUNT II**</u>
**(Violation of the Administrative Procedure Act, 5 U.S.C. §§ 558 and 706:**
**Withdrawal of License Without Written Notice or Opportunity to**
**Demonstrate or Achieve Compliance)**

68.    Plaintiffs incorporate the proceeding paragraphs as if fully set forth herein.

69.    Section 558(c) of the Administrative Procedure Act prohibits the "withdrawal, suspension, revocation, or annulment of a license" without first giving the licensee: (1) notice by the agency in writing of the facts or conduct which may warrant the action; and (2) opportunity to demonstrate or achieve compliance with all lawful requirements."  5 U.S.C. § 558(c).

70.    A "license" includes "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission."  5 U.S.C. § 551(8).

71.     The No-Action Relief constitutes a form of permission because it authorizes the PredictIt Market's operation without "registering under the [Commodity Exchange] Act or otherwise complying with the Act or [CFTC] regulations." Ex. A at 5.

72.     The CFTC revoked the No-Action Relief without providing those entities assisting in operating the Market with written notice of the facts or conduct which may warrant the Revocation.

73.     The written Revocation of No-Action Relief states only as follows: "The University has not operated its market in compliance with the terms of Letter 14-130," the No-Action Relief decision. There is not even a specific allegation of how the terms of the No-Action Relief have been violated, much less "notice of the facts or conduct that may warrant the revocation." 5 U.S.C. § 558.

74.     In addition, the Revocation provides those entities assisting in operating the Market with no opportunity—formal or informal—"to demonstrate or achieve compliance with all lawful requirements." 5 U.S.C. § 558. The APA requires that the permitted or licensed entity be made aware of the facts forming the basis of the Revocation and to have an opportunity to rebut them. But the Revocation took *immediate effect* and provides no opportunity to be heard, much less one informed about the facts that the Commission believes may warrant revocation.

75.     Additionally, the CFTC's revocation of the No-Action Relief violates the APA as it is "without observance of procedure required by law," *id.* § 706(2)(D), insofar as the revocation of the permission to operate the PredictIt Market was not accompanied by the notice and opportunity to demonstrate compliance required by Section 558(c) of the APA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment in their favor and:

a)  Enter an order vacating, "hold[ing] unlawful and set[ting] aside" the Commission's Revocation of the No-Action Relief as arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law and/or without observance of procedure required by law, 5 U.S.C. § 706;

b)  Enter an order vacating the CFTC's Revocation of the No-Action Relief for failure to provide written notice or an opportunity to demonstrate or achieve compliance with the No-Action Relief's requirements, 5 U.S.C. §§ 558, 706;

c)  Enter an order enjoining the CFTC from requiring the liquidation of outstanding contracts on the PredictIt Market before they are settled in the normal course based on the occurrence or non-occurrence of the event specified in the contract and from prohibiting the addition of additional contracts (as new candidates emerge for a particular election) to make the existing set of contracts on a particular election complete, including enforcement of the February 15, 2023, forced liquidation date in the Revocation;

d)  Enter an order enjoining the CFTC from requiring the liquidation of outstanding contracts on the PredictIt Market before they are settled in the normal course based on the occurrence or non-occurrence of the event specified in the contract until Plaintiffs have had the opportunity to be heard and to present evidence before the Court in support of its claims that the revocation of the No-Action Relief violates the APA;

e)  Award Plaintiffs their litigation costs and reasonable attorneys' fees; and

f)  Order such other relief as the Court may deem just and proper.

[*Signatures on Following Page*]

Dated: September 9, 2022                      Respectfully submitted,

                                              */s/ John J. Byron*
                                              Michael J. Edney
                                              *(Application for Admission to the Western District of Texas Forthcoming)*
                                              Steptoe & Johnson LLP
                                              1330 Connecticut Avenue, NW
                                              Washington, DC 20036
                                              T: (202) 429-3000 / F: (202) 429-3902
                                              medney@steptoe.com

                                              - and -

                                              John J. Byron
                                              Texas Bar No. 24078296
                                              Steptoe & Johnson LLP
                                              227 West Monroe Street, Suite 4700
                                              Chicago, IL 60606
                                              T: (312) 577-1283 / F: (312) 577-1370
                                              jbyron@steptoe.com

                                              *Attorneys for Plaintiffs Kevin Clarke, Trevor Boeckmann, Harry Crane, Corwin Smidt, Aristotle International, Inc., and Predict It, Inc.*